Modified.

24 C.C.P.A.(Patents)

## In re DREYFUS.
## Patent Appeal No. 3785.

Court of Customs and Patent Appeals.
June 7, 1937.

I. Seltzer and C. W. Levinson, both of New York City, for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

The fifteen claims, 12, 19, 22, 25, 27 to 31, inclusive, 36, 38, 43, 46, 49, and 50, involved in this appeal and other claims of appellant's application for a patent relating to a process for the manufacture of aliphatic anhydrides were rejected by the Primary Examiner of the United States Patent Office. The grounds of the rejection will be more particularly stated hereinafter.

Upon appeal to the Board of Appeals, the rejection of the examiner of the here-involved claims was affirmed for substantially the same reasons as those assigned by the examiner.

From the decision of the board, appellant has appealed here.

The claims on appeal relate to a process of manufacturing aliphatic anhydrides such as acetic anhydride, which process involves subjecting an aliphatic acid in vapor form in a retort to a sufficient temperature for thermal decomposition into anhydride and water vapor. This mixture is conducted into another chamber and into a stream of vapor of some liquid that has the property of affinity for water vapor. Sufficient temperature is maintained to allow vapors of the anhydride to condense into liquid form, but yet to maintain the vapor of the entraining liquid and water in a vaporous form whereby the mixed vapor may be conducted from the top of a chamber and the condensed anhydride collected at the bottom. Appellant's specification names toluene, or toluol, or xylene, or xylol, as suitable entraining materials in vaporous form. All the claims except claim 29 broadly call for an entraining liquid. Claim 29 is limited to xylene.

The references relied upon by the examiner are:

Meingast et al., 1,570,514, January 19, 1926.

Dreyfus (British), 256,663, July 26, 1926.

Ricard, 1,668,380, May 1, 1928.

Schleicher et al., 1,815,802, July 21, 1931.

Claims 12 and 29 are regarded as illustrative and follow:

"12. Process for the manufacture of an aliphatic anhydride which comprises subjecting the vapor of an aliphatic acid to thermal decomposition and separating the anhydride so formed by condensation from the reaction vapors whilst carrying away the water vapor by the vapor of at least one entraining liquid of boiling point above that of water."

"29. Process according to claim 12 wherein the entraining liquid is a xylene."

The examiner held, and the board concurred in the examiner's view, that "every claim except 29 is fully met" by Schleicher et al., and that claim 29 was not patentable over Schleicher et al. and was fully met by Schleicher et al. in view of Ricard.

The Schleicher et al. disclosure is described and applied by the examiner in the following language:

"Schleicher describes a process separating acetic anhydride and water vapor in a column of 'customary construction' by injecting vapors of benzene or toluene, etc., into the column at the base, while the mixed vapors to be separated pass into the column elsewhere. The water vapor is carried along by the hydrocarbon vapor and condensed in a receiver at a lower temperature while the anhydride is condensed in the column and passes downward counter-current to the hydrocarbon vapors. * * *

"The process of separation claimed is fully met by Schleicher who describes essentially the same procedure as applicant has. He injects benzol vapor into the base, of a column containing mixed acetic anhydride and water vapor passing in contact, it extracts the water vapor. The temperature is below the boiling point of acetic anhydride and hence, being in major portion, it must condense. The ascotropic mixture of toluene and water boils at about 80° which is lower than any other component so it will be readily carried over. Just where the water and anhydride mixture is added, probably has some small difference on the efficiency, but it is not in-volved in the claims under rejection other than found in Schleicher."

The examiner also rejected claims 12, 19, 22, 25, 27, 28, and 29, as being drawn to an old, exhausted, unpatentable combination. Claims 36, 38, 43, 49, and 50 were also rejected by the examiner as being too broad.

In view of our conclusion it is not necessary for us to consider the second and third grounds of rejection stated. We are in agreement with the concurring decisions of the tribunals that none of the claims involved are patentable over the Schleicher by Schleicher et al. when combined with et al. patent, and that claim 29 is fully met Ricard.

Appellant has stressed at great length both in brief and in oral argument the contention that the tribunals improperly rejected the claims upon Schleicher et al. for the reason that appellant is entitled to the filing date (being prior to the application date of the Schleicher et al. patent) of his prior patent No. 1,735,959, in which prior patent he contends that there is disclosed, but not claimed, the invention here involved, and argues, therefore, that Schleicher et al. cannot be used singly to anticipate the claims or in combination with Ricard to anticipate claim 29. Appellant seems to concede that if his prior patent does not disclose the issue of the claims and if Schleicher et al., therefore, is a proper reference, the rejection of the board upon that ground was proper except as to claims 19, 22, 25, 27 and 28. Appellant contends that any showing that may be made in Schleicher et al. upon the subject-matter of these claims was not in the Schleicher application when filed, but was introduced by amendment after the filing date of the Schleicher et al. application. This is, in effect, as we understand it, a contention that the amended subject matter in Schleicher et al. is new matter and, therefore, improperly in the patent.

As to the last contention the Solicitor for the Patent Office in his brief states: "Not only does it appear from the record in the instant case that the evidence, as to the amendment in the application of the Schleicher et al. application, was not brought before either the Board of Appeals or the examiner, but furthermore in the notice of appeal there does not appear to be raised the point that the Schleicher et al. patent it not entitled to its filing date for everything appearing in the printed patent. Had appellant raised any such point before the examiner or the Board of Appeals those

tribunals might have pointed out wherein the amendment was in harmony with the original disclosure and permissible under Rule 70 of the Rules of Practice in the United States Patent Office, and not contrary thereto because of the introduction of new matter as now alleged by appellant, apparently for the first time in this case."

We find, however, that in this court there is filed a stipulation, the material portion of which is divided into three paragraphs as follows:

"1. The applicant did on Aug. 12, 1933 urge before the Examiner the point that the Schleicher et al. Patent 1,815,802 was not available as a reference against claims 19, 22, 25, 27 and 28 on the ground that the statement found in lines 21 to 27 of page 1 of the printed patent did not occur in the Schleicher et al. application as filed but was inserted by amendment filed July 8, 1930.

"2. In the letter of Dec. 1, 1933, the Examiner ruled 'No inventive difference is seen in introducing the entraining liquid in vapor form as specified in claims 18 to 23, 25, 27 and 28 in place of the method disclosed in the original Schleicher et al. specification,' and thereafter the applicant made three responses to the Examiner's rejections but applicant made no specific references in these to the amendment to the Schleicher et al. application.

"3. The applicant did call attention of the amendment to the Schleicher et al. application in his brief before the Board of Appeals on appeal from the Examiner's decision."

It would seem, therefore, that we must regard the question presented by said last contention as having been called to the attention of the tribunals below, although neither of them commented upon the subject-matter in their written opinions nor does the record show that the question was considered by the board.

The record does not disclose any reason of appeal which presents this question here more specifically than do appellant's three following reasons:

"3. In holding that all the said claims, except claim 29, are unpatentable over the U. S. patent to Schleicher et al. No. 1,815,802.

"4. In holding that claim 29 is unpatentable over said patent to Schleicher et al. in view of the U. S. patent to Ricard No. 1,668,380.

"5. In holding that the applicant was not entitled to the benefit of the filing date of his U. S. Patent No. 1,735,959 as to the subject matter on appeal."

On appeal from the Primary Examiner to the Board of Appeals, the record contains nothing aside from the above-quoted stipulation bearing on the question, and the only reasons of appeal assigned there were the following:

"1. In finally rejecting all of the claims on the art and for the reasons of record.

"2. In not allowing any of the claims."

Notwithstanding the facts set out in the stipulation, it is probable that the Board of Appeals, upon the record as presented to it, did not feel required to discuss or decide the issue alleged to have been presented relating to the new matter inserted in the Schleicher et al. reference.

Appellant's reason of appeal No. 3 relates to the rejection of all the claims, except claim 29, on the Schleicher et al. patent, and reason of appeal No. 4 challenges the correctness of the rejection of said claim 29 on Schleicher et al. in view of Ricard. But, under the circumstances of this case, we are of the opinion that said reasons of appeal are not sufficiently specific to present for our consideration the question of the alleged new matter in the Schleicher et al. patent. If appellant wished consideration for this subject-matter it would seem to us that he should have pointed out with more specificity the particular matter complained of, the same not appearing upon the face of the patent. We say this without intimating whether or not, if he had done so, we would be privileged to consider the same and pass upon the soundness of appellant's contentions.

For the reasons above stated we are, therefore, of the opinion that the question with reference to the alleged new matter in the Schleicher et al. patent is not before us for consideration.

The main question pressed by appellant is that the tribunals below are in error in holding that appellant's prior patent did not disclose the use of the entraining liquid so as to support the claims at bar. On this phase of the case the examiner went into considerable detail and among other things said:

"The fact that the claims call for the entraining liquid being volatile in *in* steam is not a patentable feature since it is disclosed in the references, and is obviously

essential or the processes would not be operative.

"Applicant has tacitly admitted the propriety of the rejection since he relies, in order to avoid it, on the prior filing date of his patent 1,735,959. That process is also one of recovering and separating acetic anhydride and water from a vapor mixture of the two. The mixed vapors are passed into a water immiscible solvent for acetic anhydride above 100° C. The water vapor obviously passes on. This solvent is not used as an entraining liquid. An entraining liquid or vapor must be in motion. It gathers up the substance entrained and carries it along with it. This is the sense in which the term is used in the distillation art. A mere solvent of a vapor is not an entraining liquid. The 'Century Dictionary' gives the following definition applicable here: 'To carry along mechanically one fluid by another at high velocity.'

" 'New English Dictionary' (1933) Murray, defines 'entrain,' 'of a fluid: To carry (particles) along by its flow; spec. of steam which carries along particles of water through a pipe or particles of sugar from an evaporating pair—. Hence Entrainer— a device for saturating a current of gas or steam with liquid—in such a way that it will be picked up by a passing current of gas or steam. Entrainment—the action of a fluid in carrying particles along.'

"No such result occurs according to the process of patent 1,735,959. Applicant places much reliance on his statement, page 2, lines 44 to 50 of the patent and emphasizes 'preferably' which he states means that he would do otherwise. He says in lines 48 to 50 that he may employ solvents volatile in steam. In the following paragraph he gives a list of solvents which may be used, and in second column, lines 66 to 80 he describes use of the same solvents to absorb the acetic anhydride while the water vapor passes on. Nowhere does he state any solvents which will be volatilized with steam at the temperature use. If he used any such, they would not be solvents for the anhydride in the sense meant in the patent for there the invention is to dissolve and then redistil. If one could stretch the disclosure of the patent and include solvents like benzene toluene and xylene, then there would be no

disclosure of the process claimed herein because the *vapor* of these solvents is not passed *into the mixture of vapors,* but the *vapor mixture* would be passed in liquid solvent.

"It is evident therefore that applicant's prior patent does not disclose the invention here claimed and can not be relied upon to avoid the rejection."

The Board of Appeals adopted the same view as that of the examiner on this phase of the case but only briefly discussed the question. Concerning this important feature of the claims, the Board said: "It is our opinion that the showing in the prior Dreyfus patent has no bearing on the present situation for the reasons fully discussed by the examiner, namely, that the term 'entraining' has a definite meaning in this application which is quite distinct from a mere absorbent bath of the prior Dreyfus patent. The two processes also differ materially in other respects. In the Dreyfus patent apparently only water vapor escapes through the vent 2a and some solvent would be involved which is less volatile than acetic anhydride rather than more volatile as in the present case."

We find no error in the concurring decisions of the tribunals below that the appellant's prior patent did not disclose the "entraining" feature of the involved claims and that he may not here rely upon the disclosure of his prior patent, and that the rejection by the Patent Office tribunals of all the claims on Schleicher et al., and of the additional rejection of claim 29 on Schleicher et al., in view of Ricard, was proper. Appellant's earlier patent did not disclose the important feature of the appealed claims involving the question of entraining liquids for the reason that the subject-matter is not mentioned, nor do we regard it as being inherent in appellant's method as performed on the apparatus disclosed.

In view of this conclusion it is obvious that the additional grounds of rejection need not be discussed here, and the decision of the Board of Appeals is affirmed.

Affirmed.

GRAHAM and BLAND, Associate Judges, concur in the conclusion.